FILED
2015 Jan-29  AM 11:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VENITA LORRAINE SMITH, )<br>)<br>Plaintiff )<br>)<br>vs. )<br>)<br>CAROLYN COLVIN, )<br>COMMISSIONER, SOCIAL SECURITY )<br>ADMINISTRATION, )<br>)<br>Defendant ) | Case No.  2:13-cv-02347-HGD |

## MEMORANDUM OPINION

This matter is before the undersigned U.S. Magistrate Judge based on the consent of the parties pursuant to 28 U.S.C. § 636(c).  Plaintiff, Venita Lorraine Smith, filed for a period of disability and disability insurance benefits (DIB) and Supplemental Security Income (SSI) on April 25, 2010, alleging she became disabled on April 30, 2010.  (Tr. 19, 115, 119).  Her application was denied.  Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  Following this hearing, the ALJ issued an unfavorable decision on November 3, 2012, finding plaintiff was not disabled.  (Tr.19-28).  The Appeals Council denied review.  (Tr. 1-

3). Consequently, the Commissioner's decision is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

**I.   ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ first must determine the claimant's residual functional

capacity (RFC), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work, 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 30, 2010, the alleged onset date. At Step Two, the ALJ found that Smith had the following severe impairments: congestive heart failure, hypertension, depression and obesity. (Tr. 21). At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the

severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22).

The ALJ then reported that, after consideration of the entire record, plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she must avoid concentrated exposure to extreme heat or cold and all exposure to hazardous, moving machinery and unprotected heights. He further found that she can carry out, remember and understand simple, but not detailed or complex, instructions. (Tr. 24).

At Step Four, the ALJ found that plaintiff is capable of performing past relevant work as a dietary aide, a care-giver, and a protective service monitor. According to the ALJ, the vocational expert (VE) testified that plaintiff's past relevant work as a dietary aide and as a care-giver are both classified as unskilled work at the light level of exertion, but that plaintiff reportedly performed them at the medium level of exertion. The VE also testified that plaintiff's past work as a protective service monitor is classified as semi-skilled work at the sedentary level of exertion. According to the VE, plaintiff could perform her past relevant work as a dietary aide and a care-giver as it is generally performed, but not as she actually performed it. He further testified that plaintiff could perform her past relevant work as a protective service monitor both as it is generally performed and as she actually

performed it. (Tr. 27). Based on these findings, the ALJ concluded that plaintiff is not disabled under the Social Security Act. (Tr. 28).

## II. Plaintiff's Argument for Reversal

Plaintiff asserts that the ALJ erred in rejecting the opinion of a physician's assistant, which plaintiff references as a treating source. (Doc. 12, Brief of Plaintiff, at 6). Plaintiff also states that the ALJ failed to adequately consider plaintiff's obesity and to develop the record concerning her mental limitations. (*Id.* at 8-10).

## III. Standard of Review

Judicial review is limited to whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## IV.  Discussion

The ALJ stated in his findings that, after considering all the evidence, he found that plaintiff's determinable impairments could reasonably be expected to cause the alleged symptoms. However, he found that her statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent that they were inconsistent with the above -stated RFC assessment. (Tr. 24).

In addition to her severe impairments, the ALJ also found that plaintiff suffered from hypokalemia, insomnia, dyslipidemia and anemia. However, these are not severe impairments. Nonetheless, he considered the effects of these impairments when determining plaintiff's RFC. He found no evidence that plaintiff's non-severe

impairments impose any functional limitations on her ability to perform the exertional or non-exertional demands of work. (Tr. 25).

The ALJ noted that, with regard to plaintiff's obesity, she is 5'4" tall and weighs 305 pounds. This gives her a body mass index (BMI) of 52.3. (Tr. 25). Elsewhere in his decision, he notes that plaintiff's activities of daily living are mildly restricted. She reported that she is largely independent in her personal care and grooming, but sometimes needs assistance in getting dressed. She testified that she does light housework, but spends most of the day lounging around. (Tr. 22-23). She can prepare simple meals. She does not drive, but does grocery shopping when her daughter takes her to the store. She has a nine-year-old son who lives with her and for whom she is the primary care-giver. (Tr. 23).

The ALJ found that, with respect to her hypertension, the objective evidence shows that plaintiff began experiencing problems controlling her blood pressure in April 2010. In April 2010, she was seen at Cooper Green Hospital complaining of needing blood pressure medicine because she had been out for over a month. She began seeing a physician in May 2010 at Cooper Green Hospital, but she still had problems controlling her blood pressure in July 2010 because she again ran out of medication and had not gotten the prescription refilled. The ALJ noted that the

objective evidence reflects that plaintiff's hypertension is well-controlled when she takes her medication. (Tr. 25).

Regarding plaintiff's congestive heart failure, the ALJ noted that she underwent an x-ray in May 2010 which reflected a marked cardiomegaly with moderate shortness of breath and marked edema that markedly improved with medication. She was diagnosed as having congestive heart failure at that time. (Tr. 25). The ALJ further noted that plaintiff takes medication to control these symptoms and that, in May 2011, her studies were negative for congestive heart failure. (Tr. 25). Though plaintiff reported that she slept with two or three pillows at night and complained of shortness of breath and orthopnea, she had a normal echocardiogram, with normal ejection fraction, and no valvular regurgitation or pericardial effusion in May 2011. (Tr. 25).

The ALJ also addressed plaintiff's alleged mental impairment of depression, noting that the objective evidence reflects no real mental health treatment for depression before June 2012. In May 2010, plaintiff complained of depression over her health but denied suicidal ideation, reporting her seven-year-old son and her grandchild were her reasons to live. Plaintiff was prescribed Celexa by her primary care physician and continued to take this medication until February 2011. (Tr. 25).

In June 2012, plaintiff began seeking mental health therapy, complaining of symptoms of depression. She was diagnosed with major depressive disorder, chronic, moderate. (Tr. 25, citing Ex. 12F at 4). Elsewhere in his decision, the ALJ found that, in social functioning, plaintiff has only mild difficulties. She testified that she has no difficulty getting along with other people but testified that she has no friends. However, in papers she filed with her application for disability benefits, she reported that she talks on the telephone daily to friends for social activity. (Tr. 23).

With regard to concentration, persistence and pace, plaintiff was found to have moderate difficulties. She reported that she can pay attention for 45 minutes at a time and is only "okay" with following instructions. However, the ALJ also noted that plaintiff reported that she enjoys watching television, suggesting that she is able to concentrate for the duration of a television show. (Tr. 23). She has never experienced an episode of decompensation. (Tr. 23).

According to the ALJ, plaintiff alleged that she could only walk about a block before she has to quit and that she can only stand about 30 minutes before having to change positions. She takes medication to control her physical and mental impairments, but has some problems with compliance. (Tr. 26).

In his decision, the ALJ found that plaintiff described daily activities which are not limited to the extent one would expect, given the complaints of disabling

symptoms and limitations. He noted that plaintiff requires some assistance in dressing, but is otherwise independent in her personal grooming and hygiene. He again noted that she can prepare simple meals and is the primary care-giver for her nine-year-old son. (Tr. 26).

In his decision, the ALJ found that plaintiff's work history also does not support a finding that she is totally disabled, noting that plaintiff testified that she left her job as a care-giver when her client died and not due to her disabling symptoms. She did not look for work after her client died and instead sought unemployment benefits. She looked for work and applied in several places, but was never called back. The ALJ found that the fact that plaintiff was seeking work and felt she was capable of working is persuasive in considering whether she is totally disabled. (Tr. 26).

The ALJ gave little weight to the opinion of consultative physician, Dr. Edward A. Childs, Jr., M.D. Dr. Childs' notes state that plaintiff's records reflect non-compliance with medication, clear lungs and hypertension. He noted that her echocardiogram in May 2011 was normal. He opined that "[w]ith compliance, this appears to be a manageable issue . . . rating 02." (Tr. 202).

The ALJ gave little weight to this opinion, stating that, "[w]hile the objective evidence of record does indicate the claimant's impairments are controllable with

treatment and medication, the claimant's testimony indicates finding the claimant capable of performing light work is reasonable while viewing the evidence in a light more favorable to the claimant." (Tr. 26). The ALJ does not expound on just exactly what evidence he viewed more favorably toward plaintiff in deciding to give this opinion little weight.

The ALJ also considered the opinion of the State agency psychological consultant and found it to be of little weight. (Tr. 27). In his notes, the consultant stated that plaintiff's depression was not severe, that she has poor medical compliance and that she would do better if she had better medical compliance. (Tr. 215). However, the ALJ found this opinion to be of little weight, holding that plaintiff's current mental health treatment and her testimony establish that her depression is a severe impairment. (Tr. 27).

A physical capacities evaluation was performed by Mr. Benjamin Dale, a physician's assistant at Jefferson Metro Care. Mr. Dale found that plaintiff was limited to lifting five pounds occasionally or less, with no pushing or pulling, climbing stairs or stooping, and only occasional gross and fine manipulation, bending or reaching. (Tr. 217). Dale also found that plaintiff suffered from pain which was greatly increased by physical activity and to such a degree as to cause distraction from tasks or total abandonment of tasks. (Tr. 218). Dale also found that plaintiff suffered

from fatigue/weakness which greatly increased with physical activity to such a degree as to cause total abandonment of tasks. (Tr. 220). Apparently under the impression that Dale was a physician, the ALJ found that "Dr. Dale's opinion is inconsistent with his own treatment records regarding the claimant's physical abilities and the severity of her impairments." (Tr. 27).

Plaintiff alleges that, because the ALJ gave little weight to any of the opinions from medical sources in determining the plaintiff's RFC, there was no MSO (medical source opinion) on which the ALJ could rely. Plaintiff claims that the ALJ should have considered the opinion of Physician's Assistant Dale as an "other" source of information to show the severity of plaintiff's impairments. She also asserts that the RFC as stated by the ALJ failed to address each area of functioning under SSR 96-8p. That ruling states, in pertinent part:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. sections 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p(4).

Mr. Dale's opinion is set out above and reflects rather severe limitations in plaintiff's functional capabilities. A physician's assistant is not an acceptable medical source. *See* 20 C.F.R. §§ 404.1513(a) and 416.913(a). As a result, he cannot provide

an opinion that is the basis for finding any impairment, nor can he provide a medical opinion, which would be subject to the treating physician rules. *See* 20 C.F.R. §§ 404.1513(a), 404.1527(a)(2), 416.913(a) and 416.927(a)(2).

In any event, the ALJ rejected Mr. Dale's opinion on the ground that it was inconsistent with his own treatment notes. In this respect, Mr. Dale's treatment record for May 31, 2011, reflects that, though plaintiff was obese and diagnosed with hypertension, hypokalemia, anemia, dyslipidemia, depression and congestive heart failure, she had run out of her hypertension medication for more than a week and had otherwise normal examination findings. (Tr. 199). Mr. Dale's record at this time also reflects that plaintiff had normal echocardiogram results. (Tr. 197, 199). He encouraged plaintiff to manage her obesity with portion control and exercise. (Tr. 199). The normal examination and testing results, as well as Mr. Dale's advice to use portion control and exercise, contrast with his severely limiting opinion and provide sufficient reason for the ALJ to reject his opinion.

Plaintiff also contends that the ALJ should have further developed the record by ordering a consultative examination, particularly with regard to her mental health allegations. The regulations laid out in 20 C.F.R. § 404.1512(d)-(f) state that the ALJ may ask the claimant to attend a consultative examination at the Commissioner's expense, but only after the Commissioner (through the ALJ) has given "full

consideration to whether the additional information needed . . . is readily available from the records of [the claimant's] medical sources." 20 C.F.R. § 404.1519a(a)(1). The regulations "normally require" a consultative examination only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources. 20 C.F.R. § 404.1519a(b); *Doughty v. Apfel*, 245 F.3d 1274, 1280-81 (11th Cir. 2001).

There was sufficient evidence in the record in this case to support the ALJ's determination regarding plaintiff's mental health. Plaintiff did not receive any formal mental health treatment until June 2012. Additionally, the records of her mental health therapy from June 21, 2012, reflect a stable mood and positive feelings with decreased allegations of hallucinations. Also, plaintiff reported that she was going to look into starting a gym membership, which she thought she could do if she ate out less often. (Tr. 235). Plaintiff's activities of daily living were also considered by the ALJ. Likewise, records reflect that, when she took her medication, her condition improved. The evidence, viewed as a whole, does not reflect that the ALJ needed further evidence or a consultative examination to make an informed decision concerning her mental limitations.

The ALJ did not need to adopt a particular medical source opinion regarding plaintiff's functional capabilities in order to assess her RFC. He had to formulate the

RFC finding based on a full consideration of all the relevant evidence in the record. It is the ALJ's responsibility to determine RFC, not a physician's. 20 C.F.R. §§ 404.1527(e)(2), 404.1546(c), 416.927(e)(2) and 416.946(c). The ALJ did not err in finding plaintiff's RFC in the absence of any MSO in the record. "[T]he Commissioner's regulations do not require the ALJ to base his RFC finding to include such an opinion on an RFC assessment from a medical source. Therefore, the failure to include such an opinion at the State agency level does not render the ALJ's RFC assessment invalid." *Malone v. Colvin*, 2013 WL 4502075, at *5 (N.D.Ala. Aug. 22, 2013) (quoting *Langley v. Astrue*, 777 F.Supp.2d 1250, 1261 (N.D.Ala. 2011)). Nor does the ALJ need to rely on a formal RFC assessment issued by a physician. *Id.* (citing *Langley*, 777 F.Supp.2d at 1257-58 (citing *Green v. Comm'r of Soc. Sec.*, 223 Fed.Appx. 915, 923-24 (unpublished) (11th Cir. 2007)). In this case, plaintiff's medical treatment records support the ALJ's RFC finding. This is sufficient substantial evidence to support the ALJ's determination.

Plaintiff also contends that the ALJ failed to properly consider her obesity, stating that her BMI was in excess of the worst level of obesity discussed in SSR 02-1p and that obesity can be the cause of complications and exacerbations of physical and mental conditions. However, the ALJ did address plaintiff's obesity. He noted that plaintiff is 5'4" tall and weighs 305 pounds. The ALJ noted that, despite her

obesity, plaintiff's activities of daily living are only mildly restricted. She reported that she is largely independent in her personal care and grooming, but sometimes needs assistance in getting dressed. She testified that she does light housework, but spends most of the day lounging around. (Tr. 22-23). She can prepare simple meals. She does not drive, but does grocery shopping when her daughter takes her to the store. She has a nine-year-old son who lives with her and for whom she is the primary care-giver. (Tr. 23). Thus, despite her obesity, it is clear that plaintiff is not totally disabled by it.

Under SSR 02-1p, an RFC assessment should take account of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. *Solomon v. Comm'r, Soc. Sec. Admin*, 532 Fed.Appx. 837, 840-41 (unpublished) (11th Cir. 2013). While plaintiff points to the effects obesity *could* have on her, she points to no evidence in the record that reflects any *actual* impact her obesity had in exacerbating her other impairments or any limitations obesity caused other than those found in the RFC. Therefore, plaintiff has failed to show that the ALJ erred in evaluating her obesity.

**V.   Conclusion**

Substantial evidence supports the ALJ's RFC finding that plaintiff can perform a range of light work with certain limitations. Plaintiff has failed to show that she is

more limited than found by the ALJ. The ALJ properly considered the relevant evidence and properly weighed it in making his decision. His findings provide a thorough and detailed discussion of plaintiff's medical history, testimony and the record as a whole. Consequently, the ALJ's determination that plaintiff is not disabled is due to be affirmed. A separate order will be entered.

    DONE this 29th day of January, 2015.

*[signature]*

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE